UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **DENNIS COMBS** | **09-11053** |
| **LOUELLA COMBS** | CHAPTER 13 |
| DEBTORS | |
| **TOWER CREDIT, INC.** | ADV. NO. |
| PLAINTIFF | **09-1082** |
| V. | |
| **DENNIS COMBS** | |
| **LOUELLA COMBS** | |
| DEFENDANTS | |

## MEMORANDUM OPINION

Tower Credit, Inc. ("Tower") sued for a determination that its claim against debtors Dennis and Louella Combs is not dischargeable under 11 U.S.C. §523(a)(2)(A) and (B). This memorandum opinion sets forth the reasons the obligation is nondischargeable.[1]

### FACTS

**The Tower Loan Application**

Following initial telephone contact, Louella and Dennis Combs submitted a written application to Tower on July 17, 2007 for a $1,500 loan to pay for her sister-in-law's funeral.[2] On July 18, 2007, both debtors signed the face of the two-page application as well as separate

---

[1] Because the debt to Tower is nondischargeable under section 523(a), 11 U.S.C. §1328(a)(2) renders it nondischargeable in chapter 13.

[2] July 17, 2007 Tower credit application (Exhibit Tower-1).

documents reciting that the information on their loan application was true and correct and included all their debts.[3]  Mr. and Mrs. Combs both signed a promissory note for the loan the same day.[4]  The debtors later defaulted on the Tower loan and Tower obtained a judgment against them from the Baton Rouge City Court.[5]

### The Debtors' Alleged Misstatements and Omissions

This lawsuit turns on the Combses' alleged misstatements in connection with their application for the loan and the effect of those misstatements on the budget Tower relied on in deciding to make the loan.

The Combses' application listed among their creditors Pioneer Credit Company ("Pioneer"), from which they'd borrowed money on December 4, 2006.  However, the application omitted a second debt to Pioneer for a $3,000 loan the debtors made July 17, 2007, the day before they approached Tower.[6]  Louella Combs explained that the debtors needed both loans because the funeral cost more than they had anticipated.  Both debtors testified that they had not told anyone at Tower about the July 17, 2007 Pioneer loan because no one with Tower asked them about it.

Tower's loan application also included a section for the debtors' monthly budget, which Tower used to assess the borrowers' ability to make the loan payments.  The Combses' budget included the debtors' home mortgage payment, their automobile loan payment, a "revolving

---

[3]  Tower credit application verification page (Exhibits Tower 7 for Mrs. Combs and 8 for Mr. Combs).  Dennis Combs declined to verify his signature on the loan application, testifying that he was unable to read without reading glasses he had failed to bring to trial.  However, he did stipulate that he had signed the verification page.

[4]  Promissory note (Exhibit Tower 2).

[5]  September 22, 2008 judgment from Baton Rouge City Court case no. 08-04939, for $4,146.50 plus interest, attorneys' fees and costs (Exhibit Tower 3).

[6]  Pioneer promissory note (Exhibit Tower 6).

debit" payment, "other monthly payments," estimates for monthly utility and grocery bills, and a "cushion" of ten percent of the debtors' monthly income.[7] These budget items totaled $2,790, just $192 less than the debtors' total net monthly income of $2,982 at that time. Stephen Binning, Tower's president, testified that the debtors reviewed the completed budget; Louella Combs admitted initialing the budget section of the application.[8]

Mr. Binning testified that he did follow Tower's practice and obtained the debtors' credit report when they applied for the loan. However, neither Tower nor the Combses offered the credit report into evidence.

Binning stated that he was more concerned about the debtors' budget than their credit report, because the budget determined whether they could repay Tower. He testified that had he known about the July 17, 2007 Pioneer loan, he would not have made the loan to the debtors. The debtors' monthly payment obligations to Pioneer[9] and the projected payment to Tower would have reduced their available monthly income from $192 to a negative number, leaving them without enough money to pay their bills.

Besides not disclosing their recent loan from Pioneer, the Combses also failed to inform Tower that Mrs. Combs's nephew was living with them. Mrs. Combs admitted that the couple had claimed him as a dependent on their 2007 federal income tax return, though she testified that her nephew was only "temporarily" living with the debtors when they applied for the loan. The

---

[7] The "other monthly payments" are apparently the total of the debtors' monthly payments to Baton Rouge Credit, Pioneer, Reliable Credit Corp. and Tower. *Cushion* is the word Binning used to describe the ten percent of monthly income Tower routinely included in a loan applicant's budget to cover miscellaneous monthly expenses not otherwise itemized in the budget.

[8] Binning testified that either he or another Tower employee completed the information on the budget with the debtors' assistance. Mrs. Combs insisted that she talked to Binning about only the home mortgage payment and the auto loan payment, and not the debtors' living expenses. This discrepancy is not material to the dischargeability issue.

[9] The Combses agreed to pay Pioneer $179.01 each month on the July 2007 loan. Pioneer promissory note, Exhibit Tower 6.

debtors also omitted information about Mrs. Combs's Avon business from their Tower application. At trial Mrs. Combs admitted that she sold Avon products but insisted that the business lost money every year. She also testified that she didn't think Tower needed to know about the business.

Stephen Binning confirmed that neither debtor told him that a minor was living with them when they applied for the loan. Had he known that, Tower would have budgeted an additional $100 monthly expense for the minor's support, which in turn would have reduced the money the Combses had to pay Tower and their bills. Mr. Binning also testified that knowing about Mrs. Combs's Avon business would have been important to his decision to make the loan to the debtors, especially if it was losing money and thus left the Combses with even less to live on.

**The Debtors' Chapter 13 Petition**

The Combses filed chapter 13 on July 16, 2009. At the September 29, 2009 meeting of creditors the debtors acknowledged signing the schedules and verifying their accuracy.[10] Under questioning at the meeting, Louella Combs did not deny that they had borrowed money from Pioneer in July 2007.[11] She also testified that the Avon business had lost money every year since 2005 or 2006.[12] Mrs. Combs also admitted that her nephew was living with the debtors in July 2007 and that they had claimed him as a dependent on their 2008 income tax returns.[13]

---

[10] Transcript of September 29, 2009 meeting of creditors, p. 3, lines 12-18, (Exhibit Tower 4).

[11] Transcript of September 29, 2009 meeting of creditors, p. 16, lines 5-11. The July 2007 Pioneer loan is listed on the debtors' schedule F.

[12] Transcript of September 29, 2009 meeting of creditors, p. 4, lines 20-25; p. 5, lines 1-8.

[13] Transcript of September 29, 2009 meeting of creditors, p. 21, lines 7-25; p. 22, lines 1-11.

## ANALYSIS

### A. Tower Proved its Debt is Not Dischargeable Under 11 U.S.C. §523(a)(2)(A)

Tower's complaint alleges that the debtors' actions render their debt to Tower nondischargeable under 11 U.S.C. §523(a)(2)(A) which excepts from discharge any debt:

"for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ---

>   (A) false pretenses, a false representation, or actual fraud,
>       other than a statement respecting the debtor's . . .
>       financial condition . . . ."

Section 523(a)(2)(A) applies to debts obtained by fraud "involving moral turpitude or intentional wrong, and any misrepresentations must be knowingly and fraudulently made." *Gen. Elec. Cap. Corp. v. Acosta*, 406 F.3d 367 (5th Cir. 2005), citing *In re Martin*, 963 F.2d 809, 813 (5th Cir. 1992).

To prevail under 11 U.S.C. §523(a)(2)(A), Tower must prove that: (1) the debtors made representations; (2) the debtors knew they were false when they were made; (3) the debtors made the representations with the intention and purpose to deceive the creditor; (4) it relied on the representations; and (5) it sustained losses as a proximate result of the representations. *RecoverEdge L.P. v. Pentecost*, 44 F. 3d 1284, 1293 (5th Cir. 1995), citing *In re Bercier*, 934 F.2d 689, 692 (5th Cir. 1991).

Tower has proven that the Combses' debt to it is not dischargeable under 11 U.S.C. §523(a)(2)(A). The debtors did not disclose to Tower that they had borrowed more money from Pioneer only the day before they applied for the Tower loan on July 17, 2007. Also, the Combses' statement on the Tower application that they had no dependents was false, because

Mrs. Combs's minor nephew was living with the debtors at that time. Finally, they did not disclose Louella Combs's Avon business or tell Tower that it consistently had lost money.

The debtors knowingly gave Tower false information to get the loan when they signed the loan application, and knowingly warranted its truthfulness and completeness when the application was materially incorrect. "'When it is not disputed that a loan application was signed by the [d]ebtor, then the contents of the application should, in general, be attributed to the [d]ebtor and entitled at least to great weight, and perhaps decisive effect.'" *In re Butski*, 184 B.R. 193, 195 (Bankr. W.D.N.Y. 1993), citing *In re Kabel*, 184 B.R. 422, 425 (Bankr. W.D.N.Y. 1992). The debtors' indifference to the accuracy of the application does not protect them, since lack of care when signing loan documents indicates a reckless disregard for the accuracy of the information in the documents for purposes of 11 U.S.C. §523(a)(2)(A) and supports a finding that the debtors intended to deceive Tower. *Butski* at 195.

The debtors admitted under oath at the meeting of creditors that they borrowed money from Pioneer in July 2007, and that when they applied to Tower Mrs. Combs's nephew was living with them and Louella Combs's Avon business was losing money. Tower established that none of this information was disclosed on the debtors' loan application or to any Tower employee when they applied for credit.

The debtors' claim that they did not give Tower the omitted information because no one from Tower asked them, or alternatively, because they did not think that Tower needed it, is not credible, especially in light of their signed verification of the accuracy of the loan application. The evidence therefore supports a finding that the Combses intended to deceive Tower.

The next issue is whether Tower relied on the debtors' misstatements in deciding to extend credit to them. To render its claim non-dischargeable under section 523(a)(2)(A), Tower

6

must prove that it *justifiably* relied on the debtors' misrepresentations in deciding to extend credit to them. *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed. 2d. 351 (1995). Justifiable reliance is gauged by "'an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case.'" *In re Vann*, 67 F.3d 277, 288 (quoting *Prosser & Keaton on Torts* at 751). "'It is only where, under the circumstances, the facts should be apparent to one of the plaintiff's knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation on his own.'" *Id*. at 283 (quoting *Prosser & Keaton on Torts* at 752).

Tower argues that it relied on information the debtors provided to it in deciding to make the loan, and would not have loaned them the money had it known about the July 17, 2007 Pioneer loan, or the failing Avon business, or the debtors' dependent nephew. Binning testified that including in the debtors' budget the omitted obligations and expenses, whether singly or in combination, would have left the Combses insufficient income to repay the Tower loan.

Tower established that it justifiably relied on the information in the debtors' loan application. The debtors already were Tower customers and were not then in default on their outstanding loan. Stephen Binning testified that although he obtained a credit report on the debtors, he principally relied on the information on their budget in deciding to loan them money. No evidence supports a finding that Tower should have had any reason to investigate further any information the Combses gave it to get the loan.

### B. Tower also Proved that the Debt is Nondischargeable Under 11 U.S.C. §523(a)(2)(B)

Bankruptcy Code section 523(a)(2)(B) renders nondischargeable a debt "for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by —

7

> (B) use of a statement in writing —
>
> > (i) that is materially false;
> >
> > (ii) respecting the debtor's or an insider's financial condition;
> >
> > (iii) on which the creditor to whom the debtor is liable for such…credit reasonably relied; and
> >
> > (iv) that the debtor caused to be made or published with intent to deceive."

*Matter of Norris*, 70 F.3d 27, 29 (5th Cir. 1995). A written statement is materially false under 523(a)(2)(B) if it "'paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit.'" *Norris*, 70 F.3d at 30, quoting *In re Jordan*, 927 F.2d 221, 224 (5th Cir. 1991).

In contrast to section 523(a)(2)(A), a declaration of nondischargeability under section 523(a)(2)(B) requires proof that the creditor *reasonably* relied on the debtor's false statements:

> The reasonableness of a creditor's reliance…should be judged in light of the totality of the circumstances. The bankruptcy court may consider, among other things: whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.

*Matter of Coston*, 991 F.2d 257, 261 (5th Cir. 1993).

Tower proved that the debtors' loan application contained materially false statements about their financial condition. The debtors admitted under oath at trial and also at their meeting of creditors that they borrowed money from Pioneer the day before they took out the Tower loan, that Mrs. Combs's Avon business was losing money and that Mrs. Combs's minor nephew was the debtors' dependent the day they borrowed money from Tower. The debtors' claim at the trial that they failed to disclose any of these matters to Tower in connection with the loan application

8

because they were not asked or, alternatively, because they did not think Tower needed the information is not credible. Their signed verification of the accuracy and completeness of the loan application belies this assertion. The Combses therefore adopted the false information and intentionally misrepresented their financial condition.[14]

Tower also proved that it reasonably relied on the debtors' misrepresentations.

The debtors were not in default on their earlier loan from Tower. No information the Combses' gave Tower, or that Tower had as a result of its prior transaction with them, reasonably can be characterized as a "red flag" that would warrant Tower's further inquiry into the information on the debtors' credit application.[15] Accordingly, Tower reasonably relied on information the debtors gave it to calculate the Combses' budget for purposes of making the loan.

## CONCLUSION

Tower Credit proved that Louella and Dennis Combses' debt to it is nondischargeable under both 11 U.S.C. §523(a)(2)(A) and 11 U.S.C. §523(a)(2)(B).

Baton Rouge, Louisiana, May 26, 2010.

**s/Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

---

[14] *See Cadle Co. v. Orsini*, 2007 WL 1006919 at *5 (Bankr. E.D. Tex. 2007) (citation omitted) ("[a]s long as the written statement is written, signed, adopted or used by the debtor, the basic precondition concerning the writing requirement to the non-dischargeability complaint under section 523(a)(2)(B) is met.")

[15] Although Tower did obtain a credit report on the debtors before making the loan, no party offered it into evidence. In any event, no evidence established that the report contained any "red flags" that would have caused a prudent lender in Tower's position to question the truth of the information the debtors provided on their loan application.